The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young, the records contained in the Commission's file in this matter and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission modifies and affirms the Deputy Commissioner's award of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. The carrier on the risk was John Deere Insurance Company at all times relevant herein.
4. The parties stipulated that the date of the plaintiff's accident/occupational disease was May 7, 1997.
5. The parties stipulated that the defendants accepted the plaintiff's claim to her right hand and arm as compensable.
6. The parties stipulated that the plaintiff's average weekly wage was $485.76, yielding a compensation rate of $323.52 at all relevant times herein.
7. The parties stipulated to the plaintiff's medical records from Carolina Healthcare Associates, Southeastern Plastic Surgery/Hand Center, Gaston Orthopaedic Clinic, Rehability Center, Miller Orthopaedic Clinic, Gaston Memorial Hospital, Rehabilitative Medicine Associates of the Carolinas, Piedmont Physical Therapy and Hand Center and Concentra Managed Care, Inc.
8. The issue presented is:
 a) Whether the plaintiff is entitled to additional workers' compensation benefits under the North Carolina Workers' Compensation Act as a result of her May 7, 1997 accident/occupational disease contracted during her employment with the defendant-employer?
 ***********
Based upon all the evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old. Plaintiff completed her GED in May 1999. Plaintiff is right hand dominant and is currently unemployed.
2. Plaintiff began employment with the defendant-employer on or about October 30, 1995, where she worked on the assembly line installing carburetors on blowers. Plaintiff had to lift these items on and off the line and use a handgun. Plaintiff testified that she had to lift up to ten pounds about 600 times per night. Plaintiff also testified that in performing her job she had to use both hands for all tasks.
3. On or about May 7, 1997, plaintiff began to experience pain in her right hand and arm as a result of using the handgun. The defendants accepted plaintiff's claim to her right hand as compensable.
4. Prior to May 7, 1997, plaintiff had a ganglion cyst on her left wrist in 1994. Plaintiff had three surgeries for this condition and completely recovered.
5. Plaintiff presented to Dr. Pushpa Chander and Dr. Brian Wall on May 16, 1997 complaining of right thumb pain, wrist pain and sharp pains to her arm. On May 19, 1997, plaintiff presented to Dr. Benson Timmons, who diagnosed plaintiff with a sprain or ligament tear in her right wrist. Plaintiff was referred to Dr. Eric Emerson, a plastic surgeon with extra training in hand surgery, who eventually diagnosed plaintiff with carpal tunnel syndrome on her right hand.
6. On December 19, 1997, Dr. Emerson performed a right carpal tunnel syndrome release on plaintiff's right hand and on December 31, 1997, Dr. Emerson released plaintiff to return to work on light duty with no lifting more than five pounds. Plaintiff returned to work earning the same or greater average weekly wage.
7. On March 13, 1998, Dr. Emerson released plaintiff to return to regular duty work on a graduated schedule, but after one week, plaintiff returned to Dr. Emerson complaining of pain in her right thumb. Dr. Emerson recommended left hand only duty for approximately one week and then light duty and referred plaintiff to Dr. Chris Covington, who specializes in physical medicine and rehabilitation.
8. Dr. Covington diagnosed plaintiff with right arm pain with complications of myofascial pain syndrome, and later a diffuse pain problem in arms, trunk and legs.
9. Plaintiff continued to experience pain in her right wrist up to her elbows, shoulder and neck and also pain in her left wrist and elbow, and numbness in her left hand.
10. On December 1, 1998, Dr. Emerson performed a right trigger thumb release on plaintiff's right hand and released plaintiff to return to one-handed (left hand) light duty work.
11. On May 28, 1999, plaintiff was on her sub-assembly job with the defendant-employer, when she and her entire shift were laid off.
12. Plaintiff has permanent work restrictions of no lifting more than ten pounds, no push, pull or tugging more than ten pounds of resistance and self-paced with limited repetitive movement. Plaintiff continues to have pain in both her left and right hands and arms and she has trouble sleeping.
13. Plaintiff sought employment after being laid off by the defendant-employer, but only "line jobs" were available and her restrictions prohibited her from performing these jobs. Plaintiff also sought employment with eight different employers, including, but not limited to, HR Block, Plastic Products, Inc. and Jean's Textiles. None of these employers was hiring new employees.
14. At the time of the hearing before the Deputy Commissioner, plaintiff was enrolled at Gaston College working towards her accounting degree. Since on or about July 10, 1999, plaintiff has received $220.00 per week in unemployment benefits.
15. Dr. Emerson released plaintiff at maximum medical improvement on February 18, 1999 and assigned a permanent partial disability rating of 8% to her right hand.
16. On June 9, 1999, plaintiff presented to Dr. Forney Hutchinson, an orthopedist, for a second opinion. Dr. Hutchinson noted that plaintiff had persistent mild symptoms of degenerative arthritis in her right wrist, lateral epicondylitis in her right elbow, and that she was probably developing carpal tunnel syndrome in her left wrist. Dr. Hutchinson felt that treatment of the medial and lateral epicondylitis was warranted, as well as evaluation and management of what appears to be developing carpal tunnel syndrome in her left wrist. He noted that she might need a carpal tunnel release for her left wrist. He also notes that patient asks about relation of left hand and right elbow complaints to job and states, "Since I have not seen her in one and one-half years, I have no opinion as to whether those complaints are related. I would defer determination to Dr. Emerson." Dr. Hutchinson assigned a 3% permanent partial disability rating to her right hand as a result of the carpal tunnel and subsequent surgery. He also said that she may have an additional disability in terms of her elbow and contra lateral hand, but again deferred to Dr. Emerson on this.
17. Dr. Emerson rendered an opinion and the Full Commission finds as fact that plaintiff's employment with the defendant-employer was a significant causal factor in the development of her carpal tunnel syndrome in her right extremity and that plaintiff's May 7, 1997 occupational disease could or might have aggravated her carpal tunnel syndrome in both of her hands. Dr. Emerson relates plaintiff's condition to the repetitive nature of her work with the defendant-employer.
18. Plaintiff's problem with her left hand and arm was aggravated by her original injury of May 7, 1997 and the subsequent surgery she had to her right wrist on December 19, 1997.
19. Dr. Covington rendered an opinion and the Full Commission finds as fact that there was no relation at all between plaintiff's left hand problem and the 1994 ganglion cyst and plaintiff's left arm problem resulted from her original injury of May 7, 1997 due to her repetitive duties at work with the defendant-employer and the over usage of her left arm after her injury.
20. Dr. Covington and Dr. Emerson both rendered opinions and the Full Commission finds as fact that plaintiff's employment with the defendant-employer exposed her to a higher risk than members of the general public of contracting the condition in both hands for which plaintiff was treated and that this exposure significantly contributed to the development of her condition.
21. Dr. Covington visited the defendant-employer's plant and observed various jobs. Dr. Covington rendered an opinion and the Full Commission finds as fact that plaintiff could not return to her previous occupation with the defendant-employer.
22. Dr. Covington assigned plaintiff a permanent partial disability rating of 3% to plaintiff's right hand.
23. Cordelia Bortner, a vocational rehabilitation specialist, testified that she conducted a Labor Market Survey, which revealed that approximately 45 businesses had positions which fit plaintiff's work restrictions. However, only five to ten had actual job openings. There was no evidence that any of these jobs was available to plaintiff. Ms. Bortner also testified that she had never met or spoken with plaintiff nor had she administered any tests to determine plaintiff's potential job skills, aptitudes or physical capabilities. Ms. Bortner testified that the jobs she deemed appropriate for plaintiff were assembly jobs, machine operator and several other jobs where plaintiff would be required to do heavy lifting and unloading trucks. The Full Commission deems Ms. Bortner's testimony unreliable in that she never met or spoke with plaintiff nor administered any tests to plaintiff to determine her potential job skills, aptitudes or physical capabilities for any type of employment. Additionally, because of her compensable injuries she was not capable of heavy lifting or unloading trucks.
24. The competent evidence in the record establishes that the nature of plaintiff's work for the defendant-employer was a significant contributing factor in the development of plaintiff's right carpal tunnel syndrome and the problem plaintiff experienced in her left arm, probable left carpal tunnel syndrome, and that the work plaintiff performed for the defendant-employer placed plaintiff at an increased risk for developing right carpal tunnel syndrome and the left arm pain, probable left carpal tunnel syndrome, as opposed to the general public.
25. Plaintiff has not reached maximum medical improvement and is unable to earn wages by reason of her compensable occupational disease.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational disease of right carpal tunnel syndrome due to causes and conditions characteristic of and peculiar to her particular employment with the defendant-employer. Her occupational disease is not an ordinary disease of life to which the general public is equally exposed. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff contracted left arm pain and probable left carpal tunnel syndrome due to causes and conditions characteristic of and peculiar to her particular employment with the defendant-employer and which is not an ordinary disease of life to which the general public is equally exposed. N.C. Gen. Stat. § 97-53(13).
3. As a result of the plaintiff's right carpal tunnel syndrome, left arm pain and probable left carpal tunnel syndrome, plaintiff is entitled to compensation for temporary total disability benefits at a rate of $323.52 per week for the following dates: May 16 May 30, 1997, August 20 August 21, 1997, September 12, 1997, September 17, 1997, October 22, 1997, December 19, 1997, March 31 April 6, 1998, December 1, 1998, March 19 March 20, 1999, one-half days on December 22, 1997 and December 23, 1997 and May 28, 1999 and continuing until the plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-2(9).
4. Plaintiff is entitled to have defendants pay for plaintiff's medical expenses incurred or to be incurred regarding her right carpal tunnel syndrome, left arm pain and probable left carpal tunnel syndrome, including reimbursement for prescription medications, as a result of plaintiff's compensable occupational disease, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-2(19).
5. Defendants are entitled to a credit for unemployment compensation benefits received by the plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee herein approved, the defendants shall pay to the plaintiff temporary total disability compensation at a rate of $323.52 per week for the following dates: May 16 May 30, 1997, August 20 August 21, 1997, September 12, 1997, September 17, 1997, October 22, 1997, December 19, 1997, March 31 April 6, 1998, December 1, 1998, March 19 March 20, 1999, one-half days on December 22, 1997 and December 23, 1997 and May 28, 1999 and continuing until the plaintiff returns to work or until further Order of the Commission. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees hereinabove provided.
2. Defendants shall pay for all of the plaintiff's medical expenses incurred or to be incurred regarding her right carpal tunnel syndrome, left arm pain and probable left carpal tunnel syndrome, including reimbursement for prescription medications, as a result of plaintiff's compensable injury by accident, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
3. As the plaintiff has not yet reached the end of the healing period for her left hand and wrist, this Opinion and Award does not address this issue.
4. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff under Paragraph 1 of this Award is hereby approved and shall be paid directly to plaintiff's counsel by the defendants. Consideration and designation of this attorney's fee contemplates that the counsel for the plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendants.
5. Defendants shall have a credit against compensation for unemployment compensation benefits paid to plaintiff.
6. Defendants shall pay the costs, including an expert witness fee of $155.00 to Dr. Covington, $200.00 to Dr. Emerson and $90.00 to Ms. Bortner.
 *********** ORDER
IT IS FURTHER ORDERED that pursuant to N.C. Gen. Stat. § 97-25, the defendants shall reimburse the plaintiff for her mileage for medical treatment upon plaintiff's completion of the Industrial Commission Form 25T.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN